676 P.2d 56

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Donald ·Allen YOUNG, Defendant-Appellant.**

**No. 14092.**

Court of Appeals of Idaho.

Jan. 31, 1984.

As Corrected Feb. 14, 1984.

Bruce S. Bistline and Rolf M. Kehne, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steven W. Berenter, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

Donald Young appeals from a judgment of conviction for first degree murder and for possession of a firearm during the commission of a crime. The only issue raised in this appeal concerns the murder conviction. The issue is whether the district court committed reversible error by allowing the state to present evidence of the victim's good character. In view of the overwhelming evidence of guilt, we deem the error, if any, to be harmless; and we affirm.

The crime occurred at an apartment complex where Young and the victim, a young woman, had lived in separate apartments. The tragic events were viewed by eyewitnesses. The state's uncontroverted evidence showed that Young killed the victim with two blasts from a shotgun. The first shot was fired as Young stood near the front step of the apartment building. The victim fell on the front lawn. The second shot was fired as the victim lay in the grass. Young left the scene but soon returned, wearing a hat different from one he had worn a few minutes before, and claiming that someone else had fired the shots. However, the police arrested him after talking to the witnesses. Young later gave the police a taped statement, admitting that he killed the woman but asserting that he only intended to scare her and that he had been too drunk and confused to know what he was doing. At trial there was evidence that Young had consumed alcohol. However, a witness and a police officer who encountered Young shortly after the shooting testified that he did not appear to be intoxicated. Young elected not to testify at trial; and he called no other witnesses.

Young's taped statement was presented as part of the state's case. In this statement Young made an assertion about certain conduct of the victim. He claimed that a couple of weeks before the killing, she had exposed herself to him from her apartment window. He said that when he had attempted to discuss "why she was doing this," she threatened to accuse him falsely of rape. The defense interposed no objection to the playing of the tape. However, the defense later objected when the district court permitted two witnesses to testify about the victim's reputation for modesty.

■ In general, we note that the state cannot introduce evidence of a victim's good character unless and until the defendant has "opened the door" by first presenting evidence of the victim's bad character. *State v. Bradley*, 223 Kan. 710, 576 P.2d 647 (1978); *see generally* E. CLEARY, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 193 (2d ed. 1972). The state now argues that the door was opened by Young's assertion about the victim's conduct. Young contends that the state, not he, opened the door by playing the tape; and, in any event, the tape contained nothing exculpatory for the state to rebut. The state responds that Young's assertion about the victim might have been exculpatory insofar as it suggested that his actions had been provoked.

■ The issue is subtle and vexing. Our independent review of the taped statement indicates that Young's assertion does not lend itself to easy labeling as either exculpatory or inculpatory. But in the last analysis, the outcome of this appeal does not turn upon such a determination. In every appeal from a judgment of conviction, the question is not merely whether error has been shown but also whether the claimed error is reversible. In this case, even if we assume—without deciding—that testimony about the victim's modesty was erroneously admitted, the evidence of guilt is so overwhelming that the error must be deemed harmless.

The United States Supreme Court has articulated the constitutional test of harmless error in a criminal case. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). With exceptions not applicable here, the test is whether the reviewing court is satisfied, beyond a reasonable doubt, that the error did not contribute to the defendant's conviction. We have examined the concept of harmless error in Idaho cases. *See State v. Urqu-*

*hart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App. 1983) (constitutional harmless error); *State v. Stoddard*, 105 Idaho 169, 667 P.2d 272 (Ct.App.1983) (traditional harmless error). In those cases we noted a conceptual distinction between error arising from an evidentiary ruling and that created by infringement upon a specific constitutional right. However, we further noted that the tests of harmless error in both circumstances are substantially the same. Most recently, in *State v. Palin*, 106 Idaho 70, at 75, 675 P.2d 49 at 54 (Idaho Ct.App.1983), we stated that the "core inquiry under both tests is whether it appears from the record that the [event said to represent error] ... contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the event not occurred."

Upon the record before us, we entertain no such reasonable doubt. The killing was viewed by witnesses and Young ultimately admitted it. The sole substantial jury question was whether the state's case disclosed evidence arguably excusing the homicide or showing it to be something less than first degree murder. The only such evidence was the taped statement itself, containing Young's claims that he intended to scare the woman and that he was drunk. Neither claim would legally excuse the killing. Moreover, the first claim was transparently disingenuous in light of the undisputed fact that Young shot the victim twice. The second claim of drunkenness could have presented a question as to whether Young had the capacity to kill with intent and premeditation. However, there was no arguable connection between Young's alleged drunkenness and the victim's modesty or lack of it. Finally, we are not persuaded that the testimony about modesty—when read in context with all other evidence in the record—was so prejudicial that it tainted the jury's deliberations. We conclude that the error, if any, in admitting testimony about the victim's modesty did not contribute to the verdict and, therefore, was harmless.

The judgment of conviction is affirmed.