972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Donald Allen YOUNG, III, Petitioner-Appellant,
v.
Dave PASKETT, Warden, Respondent-Appellee.
 No. 91-36011.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 10, 1991.*
Decided July 16, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Donald Allen Young III, a state prisoner, appeals from the denial of his petition for a writ of habeas corpus. Young requests review of his conviction because he asserts that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendment.
 
 
 3
 We affirm because we conclude that Young has not demonstrated that his counsel's performance at trial fell below an objective standard of reasonableness.
 
 I.
 DISCUSSION
 
 4
 Young contends that his representation at his state murder trial was constitutionally deficient because his counsel did not present Young's voluntary intoxication as a defense and failed to object to the introduction of Young's admissions. We review de novo the question whether a defendant received ineffective assistance of counsel. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). A state court's factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).
 
 
 5
 In order to prevail on a claim of ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, the defendant must establish that a reasonable probability exists that, absent the errors, "the result of the proceeding would have been different." Id. at 694. The Supreme Court has noted that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Accordingly, a defendant must overcome a strong presumption that his lawyer is competent. Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.1987); cert. denied, 488 U.S. 829 (1988).
 
 
 6
 Young contends that he was denied effective assistance of counsel because his counsel, Klaus Wiebe, failed to present expert testimony that Young's intoxication at the time of the homicide negated the intent necessary for first-degree murder. Before Young's trial, Wiebe arranged for him to undergo psychiatric and psychological testing by several doctors. Several of these reports were favorable to Young. At the post-conviction hearing, Wiebe testified that he did not present these experts to testify about the effect of Young's intoxication on his mental state because he feared that the State would call Dr. Estess as a rebuttal witness. In his evaluation of Young, Dr. Estess opined that "Young was attempting to use his alcohol and drug use as an excuse for criminal behavior." Young v. State, 764 P.2d 129, 131 (Idaho App.1988). Dr. Estess also concluded that Young had "the capacity to form the intent to commit first degree murder." Id. Wiebe testified that he believed that Dr. Estess' testimony "would have really hurt our case."
 
 
 7
 Young asserts that Wiebe's concern that Dr. Estess' testimony would have been damaging is unfounded. Dr. Estess' opinion that Young had the capacity to form an intent to kill was partially based on statements which Young made to his wife. Wiebe testified at the post-conviction hearing that the introduction of Young's statements to his wife would have "killed us." Young contends that the privileged status of marital communications under Idaho law would have barred the introduction of Young's statements to his wife. He cites no Idaho authority to support this contention.
 
 
 8
 Under Rule 504 of the Idaho Rules of Evidence, "[a] party in an action or proceeding has a privilege to prevent testimony as to any confidential communication between the party and his or her spouse made during the marriage." Idaho R.Evid. 504. Idaho Code of Civil Procedure 9-203 provides that a wife or husband cannot be "examined as to any communication made by one to the other during the marriage." Idaho Code § 9-203 (1991).
 
 
 9
 Idaho's marital privilege rule, as set forth in Rule 504, does not expressly resolve the question whether Dr. Estess would have been permitted to testify regarding Young's statements to his wife. The Idaho Supreme Court has ruled, however, that the marital communications privilege "only addresses compelled testimony from a spouse of a privileged communication." State v. Leavitt, 775 P.2d 599, 605 (Idaho 1989), cert. denied, 493 U.S. 923 (1989) (emphasis added). Here, Young's wife disclosed her husband's statements to Dr. Estess while he was gathering information in order to evaluate Young's mental state. She was not compelled to testify about her husband's marital communications. Young has failed to demonstrate that Wiebe's conclusion, that Dr. Estess would have been permitted to rely on Mrs. Young's hearsay statements in forming his opinion of Young's mental state, fell below an objective standard of reasonableness.
 
 
 10
 Young also asserts that Wiebe should have presented rebuttal evidence to the prosecution's proof that Young's blood alcohol level was only 0.08 percent. Young argues that based on the amount of alcohol he consumed on the day of the murder, his blood alcohol level should have been higher than the test indicated.
 
 
 11
 At the post conviction hearing, Wiebe testified that he did not challenge the blood alcohol test because he could not prove the amount of alcohol that Young had consumed unless he put Young or his wife on the stand. Since Wiebe believed that allowing Young or his wife to testify would be damaging to the defense, he made a tactical decision not to challenge the results of the blood alcohol test.
 
 
 12
 Young also asserts that Wiebe should have called Connie Trouten, now Connie Keely, as a witness to testify that she had seen Young taking amphetamines several hours before the murder. After reviewing his trial preparation notes, Wiebe testified that he did not recall Connie Trouten's name nor could he remember interviewing anyone who would have corroborated Young's alleged use of amphetamine on the day of the murder. Wiebe testified that if he had known about such a witness, he would have investigated him or her. Rolf Kehne, who assisted Wiebe in Young's case, testified that he did not recollect the name Connie Trouten, but remembered that Young told them that there was a witness who could have testified about his use of amphetamines on the day of the homicide.
 
 
 13
 Connie Keely's testimony that Young used amphetamines on the day of the homicide falls within the category of evidence that might have precipitated damaging prosecution testimony in rebuttal. Wiebe made a strategic decision not to present any testimony regarding Young's voluntary intoxication because of his fear that the State would rebut it with the testimony of Dr. Estess. Young has failed to rebut the presumption that Wiebe's failure to call Connie Keely to corroborate his use of amphetamines on the day of the murder was an appropriate tactical decision.
 
 
 14
 Young also contends that he was prejudiced by Wiebe's failure to object to the introduction of Young's allegedly involuntary admissions. Wiebe testified that he allowed the prosecution to use Young's admissions because it was "the only way we could get the evidence in front of the jury of what his side of the story was that evening" without putting Young on the stand. Young has not demonstrated that this tactical decision was unreasonable. By failing to object to the introduction of the admissions, Wiebe placed Young's exculpatory statements before the jury without any cross-examination.
 
 
 15
 Young raised several other grounds to support his ineffective assistance of counsel claim before the district court which he has failed to assert before this court. Since the appellee has addressed these claims in his brief, it will not be prejudiced if we dispose of them in this appeal in order to avoid a successive petition for relief.
 
 
 16
 Young claims that Wiebe would not discuss his case with him or his family. However, Young's mother testified at the post-conviction hearing that she had spoken to Wiebe about Donald's defense on several occasions. Young's father also stated that he had discussed Young's defense with Wiebe. Wiebe was not specifically asked if he had consulted with Young in defending his case. Wiebe testified that he gave his best effort to Young. Although the Idaho state court did not make an explicit finding regarding Young's credibility, we are entitled to presume an adverse credibility determination from the fact that it denied post conviction relief on Young's ineffective assistance of counsel claim. Marshall v. Lonberger, 459 U.S. 422, 433-34 (1983). If the state judge, who had the opportunity to observe Young's demeanor at the post conviction hearing, had found Young credible it presumably would have granted relief on Young's ineffective assistance of counsel claim. Id.
 
 
 17
 Young also contends that his counsel failed to present any defense on his behalf. The record fails to support this contention. Wiebe testified that the defense's theory was "that Don had really ... exercised some terrible judgment and had done some really stupid things in going down to that apartment and confronting the girl, but that he never intended to shoot her." The shooting happened by accident because "she rushed by him, sort of knocking him against the wall and the gun going off." This defense was presented to the jury as the result of the prosecution's offer of the tape of Young's admissions into evidence. Wiebe's theory of defense was based upon the exculpatory statements contained in the admission. By failing to object, Wiebe achieved his tactical goal. Young's exculpatory statements were submitted to the jury without being subject to cross examination.
 
 
 18
 Young argues that Weibe rendered ineffective assistance of counsel by not rebutting evidence that the second shot fired at the victim was intentional. The evidence introduced at trial demonstrated that three eyewitnesses testified that they saw Young raise the shotgun to his shoulder, point it at the victim, and fire a second shot. Wiebe effectively cross-examined the witnesses about the second shot. Young has not demonstrated that his counsel's behavior fell below an objective standard of reasonableness.
 
 
 19
 Young also asserts that his counsel failed to introduce a prior inconsistent statement to impeach Ralph Rice, a prosecution witness. At trial, Rice testified that he saw Young walk to his car, do something inside it, and then lock the door. In a written statement, Rice stated that Young approached the car, but did not do anything inside. Young has not demonstrated that the failure to impeach Rice affected the outcome of his trial because several witnesses corroborated Rice's testimony.
 
 
 20
 In addition, Young asserts that Wiebe's failure to move for a mistrial after the jury allegedly saw Young in leg restraints rendered his assistance at trial ineffective. The state court found that Young did not establish that the jury had seen him in leg restraints during the trial. The state court's factual finding is entitled to a presumption of correctness. 28 U.S.C. § 2254(d). At the post-conviction hearing, Young's counsel advised the court that he had contacted nine jurors from Young's trial. Each of them stated that they had never seen Young in restraints. Gary Peek, the sergeant in charge of security for the Ada County Courthouse, and Earl W. Cohick, the bailiff during Young's trial, testified that they were unaware that the jury had seen Young in restraints. Young has not overcome the presumption that the state court correctly found that the jury had not seen him in restraints.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unamimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App. P. 34(a); Ninth Circuit Rule 34-4