# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARTIN PAUL SKROPETA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 69812

MARTIN PAUL SKROPETA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71642



FILED

DEC 2 2 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

These are consolidated appeals from a judgment of conviction, pursuant to a jury verdict, of second-degree murder and robbery and from a district court order denying a motion for a new trial. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

Appellant Martin Paul Skropeta first argues that the State failed to provide adequate notice of the charges against him when it amended the charging instrument immediately before the trial. Skropeta told police that he had killed the victim Kelli Keesee by falling on her and crushing her throat with a baseball bat that they were struggling over. The testimony presented at the preliminary hearing showed that Keesee died of tension pneumothorax caused by a crushing injury incurred during the struggle. As the amendment merely changed the specific type of act causing mortal injury from "landing on" to "crushing" to conform to the evidence without changing the theory of prosecution that Skropeta murdered Keesee

by crushing part of her body during a struggle in their apartment, we conclude that Skropeta had adequate notice of the charges against him and the district court did not abuse its discretion by permitting the State to amend the information. *See Viray v. State*, 121 Nev. 159, 163, 111 P.3d 1079, 1082 (2005) (concluding that district court did not abuse its discretion by allowing State to amend information to conform to preliminary hearing testimony where charges remained the same and amendment did not affect defendant's substantial rights). Skropeta's reliance on *Barren v. State*, 99 Nev. 661, 669 P.2d 725 (1983), is misplaced. *Barren* addressed the sufficiency of an indictment where it alleged a theory of liability for murder based on the defendant's direct, personal actions but the State proceeded to trial on a theory of vicarious liability. *Id.* at 668, 669 P.2d at 729. *Barren* does not control here, as the State did not change its theory of liability.

Second, Skropeta argues that the district court erroneously overruled his objection to the State's improper character argument during opening statement. The opening statement outlines the evidence to be presented without providing an occasion for argument. *Watters v. State*, 129 Nev. 886, 889-90, 313 P.3d 243, 247 (2013). The error complained of was not of a constitutional dimension, and, having reviewed Skropeta's pretrial statements, we conclude that Skropeta failed to demonstrate any harm warranting reversal. The State emphasized elements of Skropeta's statements that it anticipated to be, and were, presented at trial. The opening statement was not improper in this regard, and the district court did not abuse its discretion in overruling Skropeta's objection. *See id.* at 890-92, 313 P.3d at 247-48 (providing that opening statement should set forth evidence believed in good faith to be available and admissible and reviewing challenges to opening statement for abuse of discretion).

 

Third, Skropeta argues that the district court should have excluded hearsay testimony from Keesee's supervisor. When the supervisor was conducting an audit of Keesee's uncommonly problematic work, Keesee became upset and described problems with and fear of Skropeta. Skropeta objected on hearsay grounds, and the district court overruled on either NRS 51.105 (then-existing state of mind) or NRS 51.075 (residual exception). Because the defense argued accidental death, Keesee's state of mind was relevant, and NRS 51.105 applied to her then-existing mental state of fear. *See Tabish v. State*, 119 Nev. 293, 310, 72 P.3d 584, 595 (2003) (holding state of mind to be relevant where one defense theory was accidental death). While the district court abused its discretion in admitting this evidence without a limiting instruction, we conclude that this error was harmless in light of evidence of extensive injuries to Keesee belying Skropeta's theory of an accidental fall causing death. *See id.* at 310-11, 72 P.3d at 595 (holding that state-of-mind hearsay evidence must be accompanied by a limiting instruction and reviewing hearsay errors for harmless error).

Fourth, Skropeta argues that the district court should have granted the mistrial motions that he made after the State's opening statement, after an audience member fainted, and after the State's closing argument. In opening statement, the district court sustained Skropeta's objection as argument to State's comments that Skropeta flirted with the 911 operator and cold-plated Keesee's car to avoid immediate capture. As the district court immediately admonished the jury after the State's comments and the egregiousness of the arguments, to the extent that the comments were argument, was minimal, the district court cured any prejudice caused and did not deprive Skropeta of a fair trial. *See Watters*, 129 Nev. at 893, 313 P.3d at 249 (observing that "a curative instruction that

SUPREME COURT
OF
NEVADA

(O) 1947A

3

adequately identified the prosecutor's improper comment during opening statement and instructed the jury to disregard it was sufficient to mitigate prejudice" (quoting *United States v. Dougherty*, 810 F.2d 763, 768 (8th Cir. 1987)); *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004) (holding mistrial on defendant's motion may be warranted where prejudice occurs to prevent defendant from receiving fair trial). Skropeta offers no authority showing that the district court abused its discretion in not sua sponte ordering a mistrial on the basis of the State's references to "Defendant's 'story,'" and we decline to address this claim. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). We conclude that Skropeta has not shown that his right to a fair trial was prejudiced after an audience member fainted during the presentation of autopsy photographs where the district court immediately told the jury that an audience member had had a medical issue and cleared the courtroom; noted that it was not clear that the medical issue was caused by the autopsy photographs; observed that the fainting was not so evident that everyone in the courtroom noticed, as the district judge only became aware when signaled by the bailiff; and found that Skropeta was not prejudiced by the incident. *See Commonwealth v. Simmons*, 662 A.2d 621, 634-35 (Pa. 1995) (holding that mistrial was unwarranted after witness fainted because the incident was brief, and district judge promptly cleared the courtroom and later informed jury that the witness was doing fine). Regarding the State's argument in closing that Skropeta had an egotistical character, we conclude that Skropeta has not shown that his right to a fair trial was prejudiced, as the district court immediately admonished the jury and the State's few subsequent comments about Skropeta's character were not so egregious as to prevent him from receiving a fair trial under a mistrial standard. And the State did not

improperly argue for Keesee's good character, as Skropeta placed her character into issue by arguing about her anger and alcoholism. *See State v. Kunellis*, 78 P.3d 776, 790 (Kan. 2003) (holding "State may not present evidence of a victim's good character unless and until it has been attacked by the defense"). Accordingly, we conclude that the district court did not abuse its discretion in denying Skropeta's mistrial motions. *See Rose v. State*, 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007) (reviewing district court's decision to deny motion for a mistrial for abuse of discretion).

Fifth, Skropeta argues that the State committed prosecutorial misconduct on four grounds. We conclude that Skropeta has failed to show that the prosecutor acted improperly on the first three grounds and failed to show plain error as to the fourth. *See Valdez v. State*, 124 Nev. 1172, 1188, 1190, 196 P.3d 465, 476-77 (2008) (holding that preserved prosecutorial misconduct claims must first show prosecutor's improper conduct and then whether reversal is warranted and reviewing unpreserved claims for plain error). As to the first ground, while the prosecutor's comment that "there's only two people that know what happened, and one of them's dead" approaches the line of impermissibly commenting on Skropeta's failure to testify, the prosecutor did not cross that line here. The context shows neither that the prosecutor manifestly intended to comment on nor that the jury would naturally and necessarily conclude that the prosecutor was commenting on Skropeta's failure to testify. *See Harkness v. State*, 107 Nev. 800, 803, 820 P.2d 759, 761 (1991) (holding that indirect reference to defendant's decision not to testify is constitutionally impermissible when manifestly intended to be or jury would naturally and necessarily interpret it as a comment on defendant's failure to testify). Rather, the prosecutor sought to rebut the defense's argument regarding

SUPREME COURT
OF
NEVADA

(O) 1947A

5

amending the charging instrument by explaining that the State based the initial charges on Skropeta's account of events in his police statement and amended the charges after the preliminary hearing testimony showed a different manner of death. As to the second ground, the prosecutor's argument that Skropeta's character witnesses were less credible because they had not seen him in years and several had difficulty recognizing him did not attempt to indirectly reference Skropeta's custodial status because the argument did not imply any particular reason that the witnesses had not seen Skropeta and the statement by one character witness that Skropeta had been incarcerated when the witness had last seen him more than a year earlier is too meager a basis to support that the prosecutor intended to indirectly reference Skropeta's custodial status. *Cf. Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991) (concluding that "[i]nforming the jury that a defendant is in jail raises an inference of guilt, and could have the same prejudicial effect as bringing a shackled defendant into the courtroom"). As to the third ground, the record belies Skropeta's claims that the prosecutor's questioning of Detective Lewis or Mr. Douglas was argumentative and that the prosecutor mischaracterized his police-statement description of the struggle with Keesee in cross-examining the defense expert. As to the fourth ground, Skropeta correctly claims that the prosecutor improperly used leading questions on direct examination of Detective Lewis without the permission of the court, *see* NRS 50.115(3)(a), yet cannot show that this unpreserved error affected his substantial rights where the leading questions merely served to emphasize portions of his police statement, which was already before the jury. Accordingly, we conclude that these prosecutorial misconduct claims fail.

Sixth, Skropeta argues that the district court should have granted a new trial on the basis of a *Brady v. Maryland*, 373 U.S. 83 (1963), violation for not disclosing Keesee's Facebook posts after he requested their disclosure and the newly discovered evidence those posts constituted. We conclude that Skropeta's *Brady* claim fails because the State did not withhold this evidence where the posts were publicly accessible, it is unclear that the State possessed this information held on a third-party platform, and Skropeta's discovery request shows that he knew of the posts and could have freely reviewed them regardless of State action. *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (holding that *Brady* claim requires that the State withheld favorable evidence, among other factors); *see also United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 ("[I]f the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails."). Likewise, because the information was publicly available and available to Skropeta with the exercise of reasonable diligence, the Facebook posts were not newly discovered evidence when counsel reviewed them after trial. *See* NRS 176.515(1); *Oliver v. State*, 85 Nev. 418, 424, 456 P.2d 431, 435 (1969) (holding that defendant must show that evidence could not have been discovered for trial with the exercise of reasonable diligence to merit a new trial based on newly discovered evidence). The district court therefore did not abuse its discretion in denying Skropeta's motion for a new trial.

Seventh, Skropeta argues that the district court considered impalpable evidence at sentencing. While the prosecutor introduced evidence of uncharged bad acts that had not been previously addressed by describing instances of Skropeta's misconduct told to her by his brother, who did not testify at trial and was not subject to cross-examination, the

district judge never indicated that she relied only on this highly suspect evidence in sentencing Skropeta in accordance with the statutes under which he was convicted. *See* NRS 200.030(2); NRS 200.380(1); *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). And Skropeta has failed to identify any basis in the record suggesting that the district court improperly imposed a greater sentence as a "trial tax." This claim therefore fails.

Lastly, Skropeta argues that cumulative error warrants relief. While the crimes charged here are grave and Skropeta has identified several errors, the issue of his guilt is not close, and the errors themselves were minor and either harmless, not affecting his substantial rights, or met with the district court's admonishment. *See Mulder v. State*, 116 Nev. 1, 16, 992 P.2d 845, 854-55 (2000). Accordingly, cumulative error does not warrant relief.

Having considered Skropeta's contentions and concluded that relief is not warranted, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. Stefany Miley, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk